KOEPPEL, by Guardian *ad litem*, Appellant, vs. CLEMENTS, Respondent.

KOEPPEL KAR KO, Appellant, vs. SAME, Respondent.

*January 12—February 7, 1950.*

For the appellants there was a brief by *Lowry, Hunter & Frame* of Waukesha, and oral argument by *Richard N. Hunter* and *B. A. Frame.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* and *Norman C. Skogstad* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

FRITZ, C. J. The collision involved in these actions occurred at about 2:30 a. m., on October 31, 1947, on the north twenty-feet-wide concrete lane for westbound traffic on a divided highway, the south lane of which for eastbound traffic was separated from the north lane by a fifty-feet-wide grass parkway, with occasional concrete crossovers between the lanes. Along the north edge of the north lane, the highway had an eight-feet-wide graveled shoulder; and from this shoulder there were at the place of the collision two graveled-driveway entrances about one hundred thirty-five feet apart to Pick's Club Madrid, a public resort along the north shoulder. Midway between those entrances there was a lighted conspicuous neon sign indicating Pick's Club. The plaintiff, Dennis Koeppel, testified: That the night of the accident the weather was misty and cloudy, and the concrete pavement

was wet and slippery, but the mist was not thick enough to interfere with his vision, and he could see a man forty feet away. That as he approached Pick's Club he was traveling westward at about fifty miles per hour in the north lane; that he saw no cars ahead of him going in the same direction, but saw an eastbound car near railroad tracks, which crossed the highway (over four hundred feet west of Pick's Club), and that this car turned in front of him and proceeded across the highway to enter Pick's resort; and that he remembered he put on the brakes of his car and then hit the other car. (It is undisputed that as a result of the collision Koeppel sustained a severe brain injury rendering him completely unconscious until sometime in December, and eliminated any recollection on his part until Easter in 1948.)

On cross-examination Koeppel testified first that when he first saw Clements' car it was about five feet away going toward the east, and it turned from the lane going east to the north directly across in front of the Koeppel car, which was headed west on the north concrete lane. However, on subsequent cross-examination Koeppel testified: That when he first saw Clements' car it was fifteen feet away, and that he put on his brakes, tooted his horn, and turned and traveled south about fifteen feet before the collision. That when the collision happened the Koeppel car was on the concrete and he did not turn at all that he noticed; and that the front end of the car hit and came together with the back end of Clements' car, which was hit right squarely from the rear.

A deputy sheriff, who received the call at 2:30 a. m., testified: That when he arrived at Pick's Club he saw, on the west driveway entrance, the Clements car facing somewhat northwesterly, and the Koeppel car facing north, and neither car was on the concrete highway. That on the south portion of the lane for westbound traffic there were skid marks which commenced at the first crossover east of where the accident happened and extended about one hundred forty feet to a

point three feet south from the north shoulder of the road. That where the marks ended he saw debris,—dirt, oil, and glass,—a little past the middle of Pick's west driveway, but there was none east of that point. That in the collision the rear end of Clements' car was completely damaged, and the left side or left center of the Koeppel car was right up against the right rear end of the Clements car; and that he could not open the left side door of the Koeppel car.

Clements testified: That as he was approaching Pick's Club he was traveling westward at about thirty-five miles per hour on the northernmost part of the concrete lane on the right-hand side of the road. That as he had driven past the easternmost driveway at Pick's Club he slowed down and was going at approximately twenty miles per hour and was just about ready to make his turn into Pick's west driveway when there was a loud crash, and as he was straightening himself up in his seat he realized his car had stopped and something had happened. That upon getting out of his car and running back to see, he noticed the Koeppel car and tried to open the driver's side door, but it was jammed; and that he ran around and opened the right side door, and noticed Koeppel slumped over with his head toward the right-hand side of the car and his hips and legs still under the steering wheel, and that he was unconscious but his pulse was beating in good order. That before the accident Clements had not gone west beyond Pick's westernmost entrance and had not traveled in the east-bound lane or changed his direction at any time before the collision. That at the time of the impact his car was traveling parallel with the edge of the concrete roadway and he had not yet started to make any turn off the concrete. That he did not see the Koeppel car at any time before the impact, and had no idea of the presence of another car and made no observation toward the east to see whether anything was coming. That his car moved fifteen to twenty feet after the impact. Clements' testimony that he was driving west on the

north lane of the highway and that his car was still on this lane just preparing to make the turn into Pick's west entrance was corroborated by testimony of the three guests in his car.

In the special verdict the jury found that Clements was causally negligent with respect to lookout, yielding the right of way, and control and management; and that Koeppel was not negligent in any of those respects. Upon motions after verdict the trial court decided that the evidence does not admit of the jury's finding that there was causal negligence on the part of Clements. In its decision the court stated:

"Viewing Dennis Koeppel's story in any light I am unable to see how causal negligence on the part of the defendant Clements can be found. There is one most significant undisputed fact in the case—the Koeppel car struck the Clements car almost squarely in the rear. This circumstance cannot be made to square with any theory of the plaintiff which he claims permits a finding of negligence on the part of Clements. At the trial Koeppel testified that he first observed the Clements car coming east when it was 'by the railroad tracks,' that it turned in front of him, and that was all he remembered. He testified that the car turned in front of him 'across the highway into Pick's.' If that were true he could not have struck Clements in the rear. Of course, it is possible that the Clements car might have been turned to its left so as to place it where it might have been struck in the rear, but that is not the testimony. In fact, Koeppel testified that he does not remember what happened after the left turn except that the two cars collided. At his adverse examination Koeppel testified that when he first saw the Clements car it was directly in front of him, five feet away, facing directly east on the south lane, the headlights toward him. If this story were true it would have been physically impossible for Clements, five feet away from Koeppel, to have turned across the boulevard onto the north lane and headed his car west so as to have been struck squarely from the rear. . . . At his adverse examination he also testified that he first saw the Clements car when it was fifteen feet from him. In that short distance it would also have been physically impossible for the cars to collide as they did. It should not be overlooked that Koeppel testified

that he was going at the rate of about fifty miles per hour just before the collision. . . . There is no positive testimony indicating in what manner Clements drove his car, except that of defendant's witnesses. The jury could only speculate as to his conduct if they ignored his testimony and that of his witnesses. It requires no citation of authorities to the point that a jury may not be allowed to determine issues of fact from mere conjecture. 'In a case like this it is incumbent upon the plaintiff to show by evidence, with reasonable distinctness, how and why the accident occurred.' *Hyer v. Janesville,* 101 Wis. 371. This the plaintiff has failed to do, and the court may not permit the jury's findings to stand."

The photographs showing the condition of the Clements car after the collision, and the other evidence in relation thereto, establish beyond dispute that the court rightly concluded that the Koeppel car struck the Clements car squarely in the rear. As stated above, Koeppel himself testified that the front end of his car squarely hit the rear end of Clements' car right from the rear. In view of the physical facts and conditions thus established beyond dispute, there cannot be sustained the theory of plaintiffs' attorneys on this appeal (1) that Clements' car,—instead of approaching the place of the collision from the east in the north lane, as testified to by him and his three passengers,—was approaching from the west in the south lane for eastbound traffic, and was suddenly turned northward from that lane across the fifty-feet-wide crossover and onto the north lane in front of the car which Koeppel was driving westward at fifty miles per hour, on the right-hand side of the lane for westbound traffic; and (2) that Koeppel applied his brakes and turned to the north so that his car squarely struck the rear of Clements' car as it was proceeding northward. To support this theory plaintiffs' attorneys claim that skid marks, which started in the south half of the lane for westbound traffic and extended from somewhat east of the crossover diagonally northwestward to the place of the collision were left by the Koeppel car. But there is no evidence as

to what automobile caused those skid marks. They may have been caused by an automobile which was not involved in the collision. The claim that those marks,—which were over one hundred forty feet long,—were caused by the Koeppel car, is obviously inconsistent with his testimony that he traveled fifteen feet with his brakes on before the collision; and is likewise inconsistent with his testimony as to his driving in the north lane on the side closest to Pick's Club until just prior to the impact he turned to avoid the Clements car.

If, as plaintiffs claim, the Clements car had suddenly turned abruptly to the north lane from the south lane onto the north lane in front of the Koeppel car, traveling westward at fifty miles per hour, there is manifestly the physical impossibility of plaintiff's turning the car into such a position within the few intervening seconds and feet as to strike the Clements car squarely in the rear and push it ahead fifteen to twenty feet in a northwesterly direction as the result of the impact. That would have been impossible whether Clements' car was then fifteen feet or was five feet away, as Koeppel testified at first.

As the evidence established beyond dispute that the front end of the Koeppel car squarely hit the rear end of Clements' car, right from the rear, and that as the result of the impact just as Clements was preparing to turn from the north lane of the highway into Pick's west driveway, his car was pushed fifteen to twenty feet in a northwesterly direction, it appears probable that immediately prior to the impact Clements, driving westward at about twenty miles per hour, was in the north lane of the highway,—as he and his three passengers testified,—and likewise it appears probable that Koeppel was also driving westward in that lane, but at fifty miles per hour, as he testified, and that on overtaking the Clements car, there was a collision with the result that as the latter car was pushed northwesterly, the Koeppel car swerved somewhat to the right and stopped facing north, with its left-front door so

close along the right side of Clements' car that it could not be opened.

*By the Court.*—Judgments affirmed.

Broadfoot, J., dissents.

Gehl, J., took no part.